**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| (1) IRA LEE WILKINS )<br>)<br>   Plaintiff, )<br>) Case No. 19-cv-00069-CVE-JFJ<br>vs. )<br>)<br>(1) CITY OF TULSA, OKLAHOMA, ) ATTORNEY LIEN CLAIMED<br>(2) OFFICER WILL MORTENSON, ) JURY TRIAL DEMANDED<br>(3) OFFICER ANGELA EMBERTON, and )<br>(4) OFFICER E. RANGEL, )<br>)<br>   Defendants. ) | |

**COMPLAINT**

**COMES NOW** the Plaintiff, Ira Lee Wilkins ("Plaintiff" or "Mr. Wilkins"), and for his Complaint against the Defendants, alleges and states, as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Ira Lee Wilkins is a resident of Tulsa County, Oklahoma.

2. Defendant City of Tulsa ("City" or "Defendant City"), Oklahoma is a municipality located in Tulsa County, Oklahoma. The City provides and employs the Tulsa Police Department ("TPD").

3. The involved individual Defendants ("Officer Defendants"), including Officer Will Mortenson, Officer Angela Emberton, and Officer E. Rangel ("Rangel") were at all times relevant hereto, police officers employed by the TPD. At all pertinent times, Officer Defendants were acting within the scope of their employment and under color of State law. Based upon information and belief, the Officer Defendants were residents of Tulsa County, Oklahoma at the time of the incidents described herein.

4. The acts giving rise to this lawsuit occurred in Tulsa County, State of Oklahoma.

1

5. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343 to secure protection of and to redress deprivations of rights secured by the Fourth and/or Fourteenth Amendment to the United States Constitution as enforced by 42 U.S.C. § 1983, which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law.

6. The jurisdiction of this Court is also invoked under 28 U.S.C. § 1331 to resolve a controversy arising under the Constitution and laws of the United States, particularly the Fourth and/or Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## FACTUAL ALLEGATIONS

8. Paragraphs 1 through 7 are incorporated herein by reference.

9. On or about February 5, 2017, officers with the Tulsa Police Department ("TPD"), encountered Plaintiff Ira Lee Wilkins while he was sitting in his parked car at Jackie Cooper Imports of Tulsa, at 9393 South Memorial Drive in Tulsa, OK.

10. Multiple TPD vehicles arrived at the scene and several officers exited their vehicles and approached Plaintiff's car.

11. A blonde, male officer, who was, upon information and belief, Officer Will Mortenson ("Mortenson"), walked to Plaintiff's car and yelled at him to turn off the radio.

12. Plaintiff complied with this order and remained seated in his car.

13. Mortenson then ordered Plaintiff out of his vehicle and, again, Plaintiff complied.

14. Mortenson then turned Plaintiff around so his back was facing the officer and pushed Plaintiff against his vehicle.

15. Next, Mortenson pulled Plaintiff's hands behind his back, handcuffed him, and began frisking him. A blonde, female officer, who was, upon information and belief, Officer Angela Emberton ("Emberton") stood just inches away from Plaintiff.

16. As Mortenson was searching Plaintiff, he asked Plaintiff to identify himself. Plaintiff hesitated and Mortenson yanked back on the handcuffs and then forcefully pushed Plaintiff up against his car.

17. Plaintiff then asked why the officer was using so much force on Plaintiff's wrists. Mortenson responded by threatening Plaintiff with additional harm while the other officers on the scene can be heard laughing in the background. Emberton can be seen grabbing Plaintiff's right arm at this point.

18. Plaintiff again asked why Mortenson was exerting so much pressure on Plaintiff's wrists, to which Mortenson responded that he needed to get into Plaintiff's back pocket.

19. The two officers then began to yank on Plaintiff's arms and Mortenson yelled at Plaintiff to "quit." Plaintiff then asked what he was supposed to be "quitting."

20. Approximately five seconds later, the two officers, along with Officer E. Rangel ("Rangel"), whose body camera captured the incident forcefully took Plaintiff to the ground.

21. Plaintiff began pleading with the officers to stop and that they were breaking his wrists. A voice from one of the officer's radios then asked if the officers had "spray," and when the officer responded in the affirmative, an order was given to "spray him," despite the fact that Plaintiff was compliant, not resisting, in handcuffs and subdued with three officers on top of him.

22. Plaintiff continued pleading with the officers, who told him to "stop it." A "spraying" sound is then heard, shortly accompanied by a voice saying "that's enough."

23. Plaintiff then began wailing in obvious distress as a result of being sprayed with "OC spray," otherwise known as Pepper Spray.

24. Rangel then told the other two officers to turn Plaintiff on his side and Mortenson continued searching Plaintiff's pockets. Plaintiff very slowly rocked back and forth on his side, in obvious pain, to which one officer responded by asking Plaintiff if he "would like more spray?" Plaintiff said that he did not, and the officer taunted Plaintiff by again asking, "do you want more spray?"

25. Rangel then stated that they needed to call EMSA and report that someone had been pepper sprayed. Rangel then asked Mortenson if he was okay – without ever asking about Plaintiff's wellbeing – and told Mortenson to put on latex gloves so as to not contaminate his hands with pepper spray.

26. Emberton left the immediate area and began walking towards the TPD vehicles approximately 40 feet away.

27. Rangel proceeded to mock Plaintiff while he was writhing on the ground, and asked Plaintiff – who was obviously incapacitated – if he was "going to chill out."

28. At this point, a man who appears to be a security guard approached Plaintiff and the officers. The security guard stated that he had attempted to wake Plaintiff up before the officers arrived and that his only goal was to get Plaintiff to leave the lot. Rangel responded that, "we got you, brother."

29. Emberton then approached Plaintiff and spoke to Rangel for a few seconds before walking back to Plaintiff's vehicle, shining her flashlight through all of the windows.

30. Plaintiff continued lying on the ground in complete silence, seemingly unconscious. He was so incapacitated that Mortenson asked Rangel if Plaintiff was still breathing.

31. At this point Rangel told Mortenson that they "had to get him compliant one way or another, but he just kept fighting us," despite the fact that Plaintiff had never resisted the officers' demands.

32. Multiple TPD vehicles then arrived and several more TPD officers approached Plaintiff and Rangel. Rangel began telling the newly arrived officers what had just transpired, grossly exaggerating about Plaintiff's actions and laughing about the fact that he had pepper sprayed Plaintiff.

33. The other officers inquired about what Plaintiff had done and if he had attempted to reach for a weapon of some kind, and Rangel conceded that he had not and that he was, in fact, in handcuffs for the entirety of the assault.

34. Another officer then asked if the officers "found anything," referring to any form of contraband, to which Rangel replied that they had not found anything.

35. Plaintiff remained seated on the ground, still handcuffed, in a "slouched" position, moaning in distress. None of the officers ever attempted to check on his wellbeing or ask if he was okay.

36. Emberton retrieved some type of apparent decontamination spray from her vehicle and sprayed Rangel with it, but failed to spray Plaintiff.

37. A few minutes later, EMSA arrived and briefly washed off Plaintiff's face for the first time.

38. Several TPD officers then began to unreasonably and illegally search the inside of Plaintiff's vehicle, in violation of *Arizona v. Gant,* 129 S.Ct. 1710, 556 U.S. 332 (2009).

39. Plaintiff was ultimately charged with: 1. Assault & Battery upon a Police Officer; 2. Actual Physical Control of a Vehicle while Intoxicated; 3. Resisting an Officer; and 4. Public Intoxication.

40. All of these charges were later dismissed at request of the State.

## CAUSES OF ACTION

### CLAIM I
### EXCESSIVE USE OF FORCE
### (Fourth Amendment; 42 U.S.C. § 1983)
### (Defendants Mortenson, Emberton, Rangel, and the City of Tulsa)

41. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 40, as though fully set forth herein.

42. At the time of the complained of events, Plaintiff, as a free person, had a clearly established constitutional right under the Fourth Amendment to be secure in his person and free from unreasonable seizure through objectively unreasonable excessive force to injure him and his bodily integrity.

43. In the totality of the circumstances, Plaintiff was unarmed, cooperative, in no way actively resisting or attempting to evade TPD by flight, and in no way posing any immediate threat to the safety of TPD officers, himself or others.

44. Any reasonable police officer would, or should, have known of these rights at the time of the complained of conduct as they were clearly established at that time.

45. The actions of Officers Mortenson, Emberton, and Rangel, in throwing Plaintiff to the ground, pepper spraying him (after he was handcuffed and subdued), and sitting on top of him

were objectively unreasonable and excessive uses of force under the circumstances, and thereby violated the Fourth Amendment rights of Plaintiff.

46. The Officer Defendants' uses of force were also malicious and/or involved reckless, callous, and deliberate indifference to Plaintiff's federally protected rights.

47. The Officer Defendants unlawfully seized Plaintiff by means of objectively unreasonable, excessive physical force, thereby unreasonably restraining Plaintiff of his freedom and causing him multiple serious bodily injuries, as well as mental pain and anguish, and the damages alleged herein.

48. As a proximate result of the Officer Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial.

## CLAIM II

### Municipal Liability
### (City Only)

49. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 48, as though fully set forth herein.

50. There is an affirmative link between the deprivation of Plaintiff's constitutional rights and TPD policies, practices and/or customs which the City promulgated, created, implemented and/or possessed responsibility for.

51. Prior to the wrongful arrest of and excessive use of force on Plaintiff, there have been numerous other instances of constitutional deficiencies within the TPD that the City was aware of, but failed to alleviate.

52. In deliberate indifference to the harm likely to result, the City took either no remedial action, or inadequate remedial action, in response to the prior constitutional violations conducted by its officers.

53. Thus, the City has created and tolerated and maintained long-standing, unconstitutional department-wide customs, law enforcement related policies, procedures and practices, and failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference with respect to uses of force.

54. The deliberately indifferent training and supervision provided by Defendant City resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available to Defendant City and were also moving forces behind the violation of Plaintiff's civil rights and the resulting injuries alleged herein.

55. As a direct result of Defendants' unlawful conduct, Plaintiff has suffered serious actual physical and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial.

Respectfully submitted,

/s/Robert M. Blakemore
Robert M. Blakemore, OBA #18656
Daniel E. Smolen, OBA #19943
Bryon D. Helm, OBA #33003
Smolen & Roytman, PLLC
701 S. Cincinnati Ave.
Tulsa, Oklahoma 74119
P: (918) 585-2667
F: (918) 585-2669

**Attorneys for Plaintiff**

9

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of February 2019, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants who have appeared in this case.

                                          s/ Robert M. Blakemore